## DANIEL GILLHAM

*v.*

## THE MADISON COUNTY RAILROAD COMPANY.

SURFACE WATERS—*rights of the servient and dominant heritage.* The owner of a servient heritage has no right, by embankments or other artificial means, to stop the natural flow of the surface water from the dominant heritage, and thus throw it back upon the latter.

WRIT OF ERROR to the Circuit Court of Madison county; the Hon. JOSEPH GILLESPIE, Judge, presiding.

The opinion states the case.

Messrs. BILLINGS & WISE, for the plaintiff in error.

Messrs. DALE & BURNETT, for the defendants in error.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

The question presented by this record is, has the owner of a servient heritage a right, by embankments or other artificial means, to stop the natural flow of the surface water from the dominant heritage, and thus throw it back upon the latter?

The case was this: Plaintiff in error was the owner of a tract of land less elevated than the land in the neighborhood, from which all the water that fell upon it from rains or otherwise, flowed on to the land of the plaintiff, and which, by means of a depression in his land, ran off his land to adjoining land, and thence into a natural lake.

The defendant, a railroad company, made a large embankment on the line of plaintiff's land, entirely filling up this channel, thereby throwing the water back on plaintiff's land. Negligence in so doing, without leaving an opening in the embankment for the water to flow on and escape, was alleged in the declaration. A demurrer was sustained to the declaration.

This is a very interesting question, demanding more time for its thorough examination than we have at our disposal.

We have looked into the authorities cited on both sides, and find, in Massachusetts, the courts of that State recognize the right of the servient heritage to obstruct the natural flow of surface water, acccording no right of action in behalf of a person

injured thereby.   *Gannon* v. *Hargadon,* 10 Allen, 109 ; *Dickson* v. *Worcester,* 7 ib. 19 ; *Inhabitants of Franklin* v. *Fish,* 13 ib. 212 ; *Parker* v. *Newburyport,* 10 Gray, 28 ; *Flagg* v. *Worcester,* 13 ib. 601.   The doctrine of these cases wholly ignores that most favored and valuable maxim of the law, *sic utere tuo, ut alienum non lœdas,* a maxim lying at the very foundation of good morals, and so preservative of the peace of society.

In *Kauffman* v. *Griesemer,* 26 Penn., the doctrine was recognized, that the superior owner might improve his lands by. throwing increased waters upon his inferior through the natural and customary channels; and in *Martin* v. *Riddle,* ib. 415, it was held, where two fields adjoin, and one is lower than the other, the lower must necessarily be subject to all the natural flow of water from the upper one, and the owner of the lower ground has no right to erect embankments whereby the natural flow of the water from the upper ground shall be stopped; nor has the owner of the upper ground a right to make any excavations or drains by which the flow of the water is directed from its natural channel, and a new channel made on the lower ground, nor can he collect into one channel waters usually flowing off into his neighbor's field by several channels, and thus increase the wash upon the lower fields. *Miller* v. *Laubach,* 47 ib. 154, is to the same effect.

This is the doctrine of the civil law, and has found favor in almost all the common law courts of this country and of England.   *Acton* v. *Blondell et al.* 12 Mees. & Wels. 324; *Mason* v. *Hill,* 5 B & Ad. 1; *Bellows* v. *Sackett,* 15 Barb. 96; *Laumier* v. *Francis,* 23 Mo. 181 ; *Earl* v. *DeHart,* 1 Beasley, 280 ; *Laney* v. *Jasper,* 39 Ill. 46; *Livingston* v. *McDonald,* 21 Iowa, 160.   Other cases might be cited, but we will content ourselves, for the present, with citing some comments of Professor Washburne, in his able Treatise on the Law of Easements and Servitudes, on the case of *Martin* v. *Riddle, supra :*

In *Martin* v. *Riddle*, the plaintiff was the dominant proprietor, as is the plaintiff in error here, and in his comments on the case he says: " The owner of the upper field has a natural easement, as it is called, to have the water that falls upon his own land flow off the same upon the field below, which is charged with a corresponding servitude, in the nature of dominant and servient tenements." p. 355.   To the same effect is 3 Kent's Com. 563.

The case of *Livingston* v. *McDonald, supra,* was a case of drainage, where it was held, if the ditch increased the quantity of water upon the plaintiff's land, to his injury, or without increasing the quantity, threw it upon the plaintiff's land in a different manner from what the same would have naturally flowed upon it, to his injury, the defendant was liable for the damage thus occasioned, even though the ditch was constructed by the defendant in the course of the ordinary use and improvement of his farm.

By the same reasoning, the reverse of the proposition must be true, that a person cannot, by an embankment or other artificial means, obstruct the water in its natural flow, and thus throw it back upon the upper proprietor.   *Nevins* v. *City of Peoria,* 41 Ill. 502 ; *Rudd* v. *Williams,* 43 ib. 385.

The declaration stated a good cause of action, and the demurrer should have been overruled.  ·

For the error in sustaining it, the judgment is reversed and the cause remanded.

*Judgment reversed.*