### BELA M. STODDARD ET AL.
### v.
### DAVID FILGUR ET AL.

*Dominant and Servient Estates—Drainage—Open Ditch—Right to Fill —Injunction—Parol License—Revocation—Review of Authorities.*

1. The owner of a dominant estate can not by any act of his own acquire the right to collect the surface water upon his land by artificial channels and thus flood his neighbor's land without his consent or at least acquiescence.

2. When a person makes an artificial ditch upon his own land for his own accommodation, he is not obliged to keep it open as an artificial drain for the purpose of draining the lands of others.

3. A parol license to turn water, which has been artificially collected, into a ditch upon the land of another, is valid and revocable.

4. In the case presented, it is held that the owner of the dominant estate is not entitled to an injunction to prevent the filling up of an open ditch on the servient estate.

[Opinion filed December 11, 1886.]

APPEAL from the Circurt Court of Woodford County; the Hon. S. S. PAGE, Judge, presiding.

Mr. M. L. NEWELL, for appellant.

"The expenditure of money or labor by one man on the land of another, under a license given by the owner, will estop the owner from revoking the license and wresting the former from his possession of the land. Where the licensee has expended money on the faith of the license, and put himself in

a position that he would be seriously damaged by allowing it to be revoked, the estoppel is applied in the same manner as it is to those cases of acquiescence and silent consent.  A parol license, when executed, may become an easement on the land, and where acts have been done in reliance upon a license, the licensor will be estopped from revoking it to the injury of the licensee.  This rule, that a license to do something on a licensor's land, followed by expenditure on the faith thereof, is irrevocable, rests upon the principle of estoppel because the parties can not be placed in *statu quo*.  Equity treats a license thus executed as a contract giving an absolute right.  A license can not be revoked or withdrawn as long as it is essential to the possession or enjoyment of a vested right or interest which has been created by the licensor, placed with his assent where the continuance of the license is essential to its enjoyment.  This is a branch of the rule that no one can withdraw a promise or declaration made with a view of inducing others to act after they have acted upon it, and thus placed themselves in a position where they must necessarily suffer if it be withdrawn." Herman on Estoppels, 439, citing Dyer v. Cannall, 4 Penn. 353; Bridge Co. v. Bragg, 11 N. H. 702; Rhodes v. Otis, 33 Ala. 578; Dark v. Johnson, 56 Penn. 164; Huff v. McAuley, 53 Penn. 206.

This doctrine is substantially adopted in Iowa and Indiana. Wickersham v. Orr, 9 Iowa, 260; 1 Washburn on Real Estate, 549; Russell v. Hubbard, 59 Ill. 335.  " The law is solicitous to prevent all kinds of imposition and injury from confidence reposed in the acts of others; and a parol license to do an act on one's own land, affecting, injuriously, the air and light of a neighbor's house, is held not to be revocable by such neighbor after it has been once acted upon and expense incurred. Such a license is a direct encouragement to expend money, and it would be against conscience to revoke it as soon as the expenditure begins to be beneficial.  The contract would be specifically enforced in equity.  Such a parol license, to enjoy a beneficial privilege, is not an interest in the lands within the Statute of Frauds."  3 Kent's Com. 453; 1 Washburn on Real Estate, Book 1, Chap. 12, Sec. 13.

"It matters not whether the license is granted by deed or by parol; as a mere license, it is always revocable at the will of the licensor; but when coupled with an interest in land and executed, it is irrevocable, and this constitutes the distinction between revocable and irrevocable licenses." Woodward v. Seeley, 11 Ill. 157.

Mr. C. H. CHITTY, for appellees.

It seems clear from the evidence of both Filgur and Stoddard, that Stoddard never was authorized to open or keep open that ditch. And even if he had been, such license or authority giving such right is within the Statute of Frauds and void. Such a license is revocable at any time, even though the licensee may have incurred expenditures of money upon the faith of such license. St. Louis Nat. Stock Yards v. Wiggins Ferry Co., 112 Ill. 384; Woodward v. Seely, 11 Ill. 157; Tanner v. Volentine, 75 Ill. 624; Forbes v. Balenseifer, 74 Ill. 183; Mumford v. Whitney, 15 Wend. 380; Cook v. Stearns, 11 Mass. 533; Dodge v. McClintock, 47 N. H. 386; Houston v. Laffee, 46 N. H. 505: 2 Am. Lead. Cases (5th Ed.), 557–560; Babcock v. Utter, 32 How. 439.

The rule governing the rights of the owners of upper and lower adjoining lands in this State, as to what each of them may do upon his own land affecting the flowing of surface water, has been fully settled by the following decisions: Gil. ham v. Madison Co. R. R. Co., 49 Ill. 484; Gormly v. Sanford, 52 Ill. 158; Mellor v. Pilgrim, 3 Ill. App. 476; S. C., 7 Ill. App. 306; Hicks v. Silliman, 93 Ill. 255; Herrington v. Peck, 11 Ill. App. 62; Peck v. Herrington, 109 Ill. 611. See also White v. Chapin, 12 Allen, 516; Smith v. Miller, 11 Gray, 145; Dickinson v. City of Worcester, 7 Allen, 19; Tryer v. Warne, 29 Wis. 511; Goodale v. Tuttle, 29 N. Y. 466; Miser v. Caldwell, 7 Nev. 363; Kauffman v. Grieseman, 26 Pa. 26; Miller v. Laubach, 47 Pa. 154; Livingston v. McDonald, 21 Iowa, 160.

WELCH, J. This was a bill filed by appellants against the appellees to enjoin them from filling up an open ditch dug on the lands of the appellee Filgur. A temporary injunction

was granted which, upon the hearing, the court dissolved and dismissed the bill, from which order this appeal is taken. The evidence shows that the appellant, Bela M. Stoddard, is the owner of the southeast quarter of section two in Minonk Township, Woodford County, and that the appellee, David Filgur, is the owner of the southwest quarter of said section. That Stoddard was the owner of the dominant and Filgur of the servient estate. That the surface water from a large part of Stoddard's land flowed entirely to and over Filgur's land. The water flowed over the surface among the grass and other vegetation in slight depressions of the surface of the ground, ranging from three or four to several rods in width. Filgur, in 1875, dug an open ditch on his own land, a distance of sixty-seven rods. The ditch was six feet in width at the top, two feet at the bottom, and three and one-half feet in depth. Stoddard, in 1882, constructed from fifteen to twenty tile drains, running from various portions of his land, all connected with and bringing their water together into a ten-inch tile drain, which discharged its waters into the open ditch two and one-half feet below the natural surface of the ground. Filgur, in 1885, had constructed two tile drains, one on each side of this open ditch, and was proceeding to fill up this open ditch level with the surface of the ground, when this bill was filed to enjoin him from filling it up. The legal questions presented for our consideration by this record are: 1st. What are the relative rights of the owners of the dominant and servient estate? 2d. What if any right can the owner of the dominant acquire in the servient estate under a parol license? We shall consider the questions in the order stated.

The rule announced by the Appellate and Supreme Courts of this State as to the relative rights of the owner of the dominant and servient estate, is clearly and tersely stated by Pillsbury, P. J., in Mellor v. Pilgrim, 3 Ill. App. 476. "The owner of a superior heritage can not by any act of his acquire the right to collect the surface water upon his own land by artificial channels, and thus flood his neighbor's land, without his consent. He can not impose upon the land of an adjoining proprietor without his assent, or at least acquiescence,

the additional burden of having the surface water converted into a stream when it is discharged upon his land. He is not obliged to accept it to his injury, in larger quantities or at different times than he otherwise would, but for the voluntary act of his neighbor." In Gormley v. Sandford, 52 Ill. 158, the rule is announced, when a person makes artificial ditches upon his own land for his own accommodation, he has a perfect right to fill them up to the natural surface when they are dug, and that he is not obliged to open or keep open artificial drains for the purpose of draining the lands of others. Gilham v. Madison Co. R. R. Co., 49 Ill. 484; Hicks v. Silliman, 93 Ill. 255; Peck v. Harrington, 109 Ill. 611. Tested by the rule announced *supra*, the appellants had no right to an injunction.

It is, however, insisted by the counsel for appellants that they had a license to drain into the ditch, from Filgur. Assuming that appellants had a parol license to drain into this ditch, what right did they acquire to the use of this ditch by virtue of the license ? In Woodward et al. v. Seely et al., 11 Ill. 157, Trumbull, J., said : " What then is a license ? Simply to do something which, without such permission, would have been unlawful. It matters not whether granted by deed or parol; as a mere license it is always revocable at the will of the licensor, but when coupled with an interest and executed, it is irrevocable, and this constitutes the distinction between revocable and irrevocable licenses."

When the license is coupled with an interest in land, or of such a character that the interest could not pass by parol, then a writing is essential to the creation of the interest, otherwise no interest passes. The license in this case under the rule announced *supra* was revocable. It is, however, insisted that this rule has been modified and we are referred to Russel v. Hubbard, 59 Ill. 335, Kamphouse v. Gaffner, 73 Ill. 453, and Forbes v. Balenseifer, 74 Ill. 183. In the case of Russel v. Hubbard, 59 Ill. 335, where the owner of a lot of ground contemplating the erection of a frame building thereon, the owner of a brick house situated on the line of an adjacent lot proposed to him, if he would build of brick, he might use the

Stoddard v. Filgur.

brick wall of his house for the purpose of attaching thereto the proposed new building. The proposition was accepted, and the new house was built of brick and attached to the wall of the other building. It was held that, while the license to use and attach to the wall might have been revoked prior to the execution of the purpose of the license, yet, after its execution by the expenditure of money in the erection of the new building as induced by the permission, the license was irrevocable. This case as held in 73 Ill. *supra*, was held to be limited to cases of party walls. We do not understand the *dictum* announced in the cases in 73 and 74 Ill. *supra*, to be in conflict with the rule announced in 11 Ill. *supra*, where the rule announced in " Gale and Whately's Law of Easements" was approved, " that a man may in some cases by parol license, relinquish a right which he has acquired in addition to the ordinary rights of property, and thus restore his own and his neighbor's property to their original and natural condition ; but he can not by such means impose any burden upon lands, in derogation of such ordinary rights of property. As for instance, a parol license will be valid for building a wall in front of his ancient windows, while a similar permission to turn a spout on his land from a neighboring house, will be invalid and revocable." The rule as announced is approved in Tanner v. Volentine, 75 Ill. 624, and in National Stock Yards v. Wiggins Ferry Co., 112 Ill. 384, where it is said the case of Russel v. Hubbard seems somewhat at variance with the case of Woodward v. Seely, but does not propose to overrule or question it. In Kamphouse v. Gaffner, 73 Ill. 453, we said Russel v. Hubbard must either be considered as limited to party walls or be considered as overruled, and in Forbes v. Balenseifer, 74 Ill. 183, it is rather intimated that Russel v. Hubbard is to be limited to the facts of that case. Woodward v. Seely has never been overruled or directly questioned by this court that we are aware of, and we think it must govern this case. What was said in the case of Woodward v. Seely, *supra*, may with equal propriety be said of this case: " Tested by the law as here stated the license in this case was clearly invalid as it did impose a burden upon the land of defendants in der-

ogation of what ordinarily belonged to it, and there can be no difference whether water is turned upon the land of another by means of a spout or mill-dam." "Nor can the complainants call upon a court of equity to enforce the license upon the grounds that they have made valuable improvements and expended their money relying in good faith upon it;" "before acting so imprudently, they should have acquired permission by deed to overflow the land of the defendants." We do not understand the rule announced in Morse v. Copeland, 2 Gray, 302, to be in conflict with the rule announced by the Supreme Court of this State, but if it is, it would not be binding on us. The question in this State is no longer an open one. It is *stare decisis.* There was no error in dissolving the injunction and dismissing the bill.

*Decree affirmed.*